**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Kramer,<br><br>    Plaintiff,<br><br>v.<br><br>Ocwen Loan Servicing LLC, et al.,<br><br>    Defendants. | No. CV-13-01415-PHX-DGC<br><br>**ORDER** |

Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Litton Loan Servicing, LP ("Litton") (collectively, "Defendants") have filed a motion to dismiss. Doc. 13. The motion is fully briefed and no party has requested oral argument. For the reasons set forth below, the Court will grant the motion.

**I.      Background.**

On June 24, 2013, Plaintiff James Kramer instituted this action in Maricopa County Superior Court asserting thirteen counts, including (1) violation of A.R.S. § 44-1522 by conduct, (2) violation of A.R.S. § 44-1522 by omission, (3) breach of contract, (4) violation of A.R.S. Title 31, Chapter 6.1, (5) negligent misrepresentation, (6) fraudulent concealment, (7) failure to hire, train or supervise employees, (8) breach of Consent Judgment, (9) constructive fraud, (10) equitable estoppel, (11) promissory estoppel, (12) violation of the duty of good faith and fair dealing, and (13) common law fraud. Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441(b) on July 15, 2013.

On or about July 11, 2005, Kramer obtained an interest-only variable-rate first and second lien mortgage loan in the amount of $352,000, secured by a Deed of Trust recorded against real property located at 2678 North 133rd Drive, Phoenix, Arizona (the "Property"). Kramer alleges that Litton solicited him to engage in a loan modification sometime in March 2009. Doc. 1 at 13. Litton allegedly knew the loan as modified was unattainable and designed to fail. Kramer asserts that Litton made misrepresentations and concealed material facts, including that Kramer would relinquish rights against the entity that originally helped him obtain a subprime mortgage. *Id*. Without notice to Kramer, the first lien mortgage servicing was transferred to Ocwen in March 2009. *Id*. at 14.

In December 2011, Kramer alleges that he was attracted to Ocwen's website, which offered rapid loan modifications. *Id*. After completing the online application, Kramer eventually received a phone call from Ocwen declining his application because Ocwen did not believe that Kramer's business generated only $3,500 in personal income per month. *Id*. Kramer received no assistance in preparing documents, was never offered assistance of counsel, and his application was declined because Ocwen explained that he "didn't need [the modification]." *Id*. On June 12, 2012, Kramer alleges that he again applied to Ocwen for a loan modification and was again refused without written documentation. *Id*. at 15.

Kramer missed payments on the mortgage and was served with foreclosure notices. *Id*. He alleges that he was not provided any alternative options. *Id*. With the help of a real estate agent, Kramer put the property on the market, seeking to mitigate his loss in a short sale. *Id*. He was forced to disclose severe structural damage and settling due to subsurface weakness. *Id*. Nevertheless, Kramer asserts that he was able to find a buyer willing to pay fair market value. *Id*. On May 1, 2013, Ocwen refused to permit the sale, explaining that the offer "was not sufficient." *Id*.

On May 15, 203, Ocwen hired a third party to perform a Broker's Price Option ("BPO"). *Id*. at 16. As a result of the BPO, Ocwen stated that it would only approve an

offer between $250,000 and $255,000. *Id*. On May 22, 2013, Kramer and his agent negotiated a higher offer at $233,000 from a prospective buyer, but Ocwen refused to consider it. On June 10, 2013, Ocwen advised Kramer that the requirement for a short sale had risen to $260,000, which was "far above fair market value." *Id*.

Kramer alleges that despite his efforts to pursue his rights under state and federal law, Defendants now threaten to foreclose on the property. *Id*.

The Court notes that Kramer's counsel has established a pattern of submitting near identical complaints on behalf of his clients in state and federal court. Through this method of "template pleading," counsel drafts complaints that assert the same claims, make the same arguments, and reflect minimal adjustments based on factual differences between each client's case. *See, e.g.*, *Raup v. Wells Fargo Bank, NA*, No. CV-13-00137-PHX-GMS, Doc. 1; *Ripa v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-01612-PHX-DGC, Doc. 1. Almost all of the claims asserted using counsel's templates have been dismissed.

**II.   Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.   Analysis.**

  **A.   Claims Relying on Consent Judgment.**

  Kramer attaches to his complaint and incorporates by reference a copy of a 2012 Consent Judgment entered into by Bank of America Corporation, Bank of America, N.A., BAC Home Loans Servicing, I.P f/k/a/ Countrywide Home Loans Servicing, LP, Countrywide Home Loans, Inc., Countrywide Financial Corporation, Countrywide Mortgage Ventures, LLC, Countrywide Bank, FSB, the United States, 49 states, and the District of Columbia. Doc. 1 at 19, 28. Kramer also attaches a document containing settlement terms intended to accompany the Consent Judgment. Doc. 1 at 37. The Court will consider these documents on the motion to dismiss without converting it to a motion for summary judgment because they are attached to the complaint and incorporated by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

  Defendants argue that the Consent Judgment cannot be enforced against them for two reasons: Defendants were not parties to the Consent Judgment, and the Consent Judgment can be enforced only by the United States District Court for the District of Columbia. Doc. 13 at 3; Doc. 1 at 28, 32. Although Kramer relies heavily on the Consent Judgment as a basis for his claims, he does not argue that the Consent Judgment can actually be enforced against Defendants. Doc. 20 at 7. He argues that the judgment "can be evidence as to the other counts including setting standards of care, addressing prior actions and showing industry standards." *Id*. Later in his brief, Kramer argues that Defendants' actions "violate the terms of the 2012 Consent Judgment as to conduct remedies promised by Defendants." *Id*. at 15. None of Kramer's arguments rebut Defendants' assertion that the Consent Judgment cannot be enforced against them, and the Court concludes that it cannot. The Court must dismiss Count 8 in its entirety and Counts 1, 7, 9, 11 to the extent they rely on the Consent Judgment.

  **B.   Fraud Claims (Counts 1, 2, 5, 6, 9, 12).**

  Plaintiff has asserted several fraud-related claims including violations of Arizona's Consumer Fraud Act (A.R.S. § 44-1522) by conduct and omission, negligent

1  misrepresentation, fraudulent concealment, constructive fraud, and common law fraud.
2  *See* Doc. 1 at 19-23, 25. Although each of these claims has unique elements, they share
3  one common requirement – each must be pled with particularity as required by Rule 9(b).
4  *See Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1075 (D. Ariz. 2011) (noting
5  that a plaintiff must plead a claim under Arizona's Consumer Fraud Act with
6  particularity); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D.
7  Cal. 2003) ("It is well established in the Ninth Circuit that both claims for fraud and
8  negligent misrepresentation must meet Rule 9(b)'s particularity requirements."); *389
9  Orange St. Partners v. Arnold*, 179 F.3d 656, 663 (9th Cir. 1999) (requiring that a state
10 law claim for fraudulent concealment be pled with particularity under Rule 9(b)); *Vess v.
11 Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("It is established law, in
12 this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law
13 causes of action.").

14 Rule 9(b) imposes a heightened pleading standard for fraud claims: "In alleging
15 fraud . . . , a party must state with particularity the circumstances constituting fraud[.]"
16 Fed. R. Civ. P. 9(b). A plaintiff "must state the time, place, and specific content of the
17 false representations as well as the identities of the parties to the misrepresentation."
18 *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir.
19 1986); *see also Vess*, 317 F.3d at 1106 ("Averments of fraud must be accompanied by the
20 who, what, where, and how of the misconduct charged."). "[A] plaintiff must set forth
21 *more* than the neutral facts necessary to identify the transaction. The plaintiff must set
22 forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at
23 1106 (internal quotations omitted) (emphasis in original).

24 Kramer has failed to plead his fraud claims with particularity. Most of Kramer's
25 fraud allegations refer generally to "Defendants" and do not specify the defendants to
26 which he is referring. Kramer's complaint alleges that Litton contacted him and solicited
27 a loan modification that was unattainable and designed to fail, and which ultimately did
28 fail. Doc. 1 at 13; Doc. 20 at 10-11. The complaint also alleges that Litton "committed

1  misrepresentations and concealed material facts, including that the loan modification
2  included relinquishing rights as to illegal acts by Defendants." Doc. 1 at 13. Elsewhere
3  in his complaint, Kramer alleges that Ocwen refused to cooperate in his attempts to
4  secure a loan modification and otherwise mitigate his losses. *Id*. at 14-18. But Kramer
5  fails to provide sufficient facts regarding the who, what, when, where, and how of the
6  alleged misconduct. *Vess*, 317 F.3d at 1016. Although Kramer's pleadings occasionally
7  identify a specific defendant who is associated with a particular type of fraud, Kramer
8  fails to identify the person who made the alleged false statement, when or where it was
9  made, or why it was untrue or misleading at the time it was made. *Yourish v. California*
10 *Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999). Kramer's complaint appears to allege
11 generally that Defendants failed to deliver high-quality loan modification and loss
12 mitigation services as promised in their advertising and solicitations. It is this failure
13 Kramer believes gives rise to fraud liability. General allegations such as these do not
14 satisfy the pleading requirements of Rule 9(b).

15 Kramer's complaint contains other fatal errors with respect to Count Nine. Under
16 Arizona law, a relationship "akin to a fiduciary relationship must exist" for a constructive
17 fraud cause of action to arise. *McAlister v. Citibank*, 829 P.2d 1253, 1261 (Ariz. Ct. App.
18 1992). Kramer appears to contend that such a relationship exists here, "arising from the
19 initial loan origination, the relationship between the parties, the parties joint venture at
20 avoiding foreclosure . . . , the Arizona statutes . . . [and] the 2012 Consent Judgment[.]"
21 Doc. 1 at 23. Kramer is incorrect. Neither Arizona law nor the Consent Judgment
22 provides that a fiduciary relationship exists between lenders and mortgagors. *See Valley*
23 *Nat'l Bank of Phoenix v. Elect. Dist. No. 4*, 367 P.2d 655, 662 (Ariz. 1961) ("[T]he
24 relationship between a Bank and an ordinary depositor, absent any special agreement, is
25 that of debtor and creditor."); *McAlister*, 829 P.2d, 1253; *Urias v. PCS Health Sys.*, 118
26 P.3d 29 (Ariz. Ct. App. 2005) (holding that a debtor/creditor relationship does not create
27 a fiduciary duty). Further, contractual relationships alone do not give rise to fiduciary
28 duties. *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011)

("[C]ommercial transactions do not create a fiduciary relationship unless one party agrees to serve in a fiduciary capacity."). Kramer has not alleged that Defendants ever agreed to serve in a fiduciary capacity. Counts 1, 2, 5, 6, 9, and 12 must be dismissed.

### C. Contract Claims (Count 3 and the Unnumbered Count).

Plaintiff asserts two contract claims: breach of contract and breach of the duty of good faith and fair dealing. A breach of contract claim contains three elements: (1) the existence of a contract, (2) its breach, and (3) resulting damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). Arizona law implies a duty of good faith and fair dealing in every contract, which prohibits either party from acting to "impair the right of the other to receive benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986). Parties may "breach [the] duty of good faith without actually breaching an express covenant in the contract." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (Ariz. 2002).

Defendants argue that Kramer's claim for breach of contract is meritless because Kramer is the party in breach. Doc. 13 at 6. Defendants assert that Kramer was in default of his loan because he failed to "repay the loan pursuant to the terms of the parties' agreements," and did not obtain loss mitigation assistance from Defendants because he "fail[ed] to timely return completed loss mitigation applications for [Defendants'] consideration." *Id.*; Doc. 22 at 5. Although it is generally true that the party who first breaches a contract may not sue on the other party's subsequent non-performance, *see QC Construction Products, LLC v. Cohill's Building Specialties, Inc.*, 423 F. Supp. 2d 1008, 1013 (D. Ariz. 2006) (citing Restatement (Second) of Contracts § 237 (1979)), mortgage agreements often secure rights for the borrower, such as a right of redemption, that become operative upon default. Defendants' argument that Kramer defaulted on the mortgage and that he failed to secure a loan modification from Ocwen does not necessarily dispose of the breach of contract claim.

Kramer's complaint states:

> The documents developed by the parties in the origination of the loan and mortgage which are the subject of this litigation were incorporated into a mortgage note, a deed of trust and other contracts, and include promises as to loss mitigation, loan modification, payment, collection, and foreclosure, which both parties understood to be subject to modification as required by economic circumstances.

Doc. 1, at 20.  This paragraph refers to the loan origination contract between the parties. That contract, embodied in the Note and Deed of Trust, is the only contract specifically identified in the complaint.  Kramer does not explain, however, how the actions of Defendants breached the Note and Deed of Trust.  Indeed, Kramer makes reference to the Deed of Trust only once in his complaint, and has neither attached a copy nor identified any relevant sections.  Kramer does not allege any particular breach of that contract, nor does he allege any benefit under that contract that was impaired.  Kramer does allege generally that "Defendants" made false statements and concealed information from him, but nothing in the Deed of Trust guarantees Kramer the right to receive truthful information about the loan modification process.  Kramer has failed to identify benefits due under the loan origination contract or how Defendants impaired those benefits with the requisite specificity.  He has also failed to state a claim that either Defendant breached the contract of the duty of good faith and fair dealing with regard to the contract.  As such, the Court will dismiss both contract claims.

> **D.     Violation of A.R.S. Title 33 Chapter 6.1 (Count 4).**

Count 4 asserts that Defendants violated "AR.S. (sic) Title 33 Chapter 6.1." Chapter 6.1 of Title 33 of the Arizona Revised Statutes contains several sections related to Deeds of Trust.  The chapter covers everything from appointing successor trustees to the disposition of proceeds from a trustee's sale.  *See* A.R.S. § 33-801 et seq.  Kramer does not specify what section of Chapter 6.1 Defendants violated, but he contends in his response that his complaint "referred to former A.R.S. § 33-807.01."  (Doc. 20 at 14). Section 33-807.01 provides in relevant part:

> For a property with a first deed of trust recorded on or after January 1, 2003 through December 31, 2008, if the borrower occupies the property as the borrower's principal residence, before a trustee may give notice of a trustee's sale for the property pursuant to section 33-808, the lender must attempt to contact the borrower to explore options to avoid foreclosure at least thirty days before the notice is recorded.

A.R.S. § 33-807.01(A) (repealed Jan. 1, 2014). The Court can find no allegations in the complaint that clearly support a cause of action arising under this statute. Instead of alleging facts demonstrating that the Defendants failed to contact him within thirty days before notice was recorded, Kramer's complaint cites Arizona case law stating that "[b]anks are required to provide a foreclosure process which provides Plaintiffs with 'not [just] procedural, but [also] fundamental fairness,'" and concludes that "Defendants herein failed to do so, in violation of Arizona statute and common law." Doc. 1 at 21 (citing *In re Krohn*, 52 P.3d 774, 779 (Ariz. 2002)). Plaintiff has failed to state a claim under Title 33, Chapter 6.1 of the Arizona Revised Statutes. Accordingly, Count 4 will be dismissed.[1]

### E.     Failure to Hire, Train, or Supervise (Count 7).

Arizona law does not provide a cause of action for failure to hire. *See Burris v. City of Phoenix*, 875 P.2d 1340, 1348 (Ariz. Ct. App. 1993) (noting that "no state or federal court has recognized the tort of wrongful failure to hire"). Kramer cites no case law that would support such a claim on the facts of this case.

An employer's liability for "negligent hiring, retention, or supervision of an employee" depends on whether a court "first finds that the employee committed a tort." *Kuehn v. Stanley*, 91 P.3d 346, 352 (Ariz. Ct. App. 2004). Kramer does not allege in his complaint that an employee of either Defendant committed a tort, nor how Defendants

---

[1] To the extent Kramer advances a "show me the note" argument, courts have routinely held that such argument lacks merit and that the foreclosing party is not required to produce a physical copy of the original promissory note. *See Dumont v. HSBC Mortg. Corp., USA*, No. CV-10-1106-PHX-MHM, 2010 WL 3023885, at *3 (D. Ariz. Aug. 2, 2010); *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184, 1187-88 (D. Ariz. 2009).

1  were negligent in hiring, training, or supervising such an employee.  He states in his
2  response that he "alleged that employees committed numerous torts" (Doc. 20 at 15), but
3  the Court cannot find any such allegation in the complaint (*see* Doc. 1 at 22).  Plaintiff
4  has failed to state a claim for negligent hiring, retention, or supervision of an employee
5  and the Court will therefore dismiss Count 7.

6          **F.**      **Equitable and Promissory Estoppel (Counts 10 and 11).**

7          Equitable estoppel requires "an affirmative misrepresentation of a present fact or
8  state of facts and detrimental reliance by another thereon."  *Tiffany Inc. v. W. M. K.*
9  *Transit Mix, Inc.*, 493 P.2d 1220, 1224 (Ariz. Ct. App. 1972).  It is generally "available
10 only as a defense, while promissory estoppel can be used as a cause of action for
11 damages."  *Id.*  Arizona courts have treated claims for equitable estoppel as claims for
12 promissory estoppel where plaintiffs have adequately alleged the elements of promissory
13 estoppel.  *Gorman v. Pima Cnty.*, 287 P.3d 800, 804 n.4 (Ariz. Ct. App. 2012).  "The
14 critical distinction between the two is that equitable estoppel refers to reliance on a
15 misrepresentation of some present or past fact, whereas 'promissory estoppel rests upon a
16 promise to do something in the future.'"  *Id.* (internal citation omitted).  Aside from that
17 difference, "promissory estoppel includes all elements of equitable estoppel."  *Id*.

18         Estoppel contains three elements: "(1) the party to be estopped commits acts
19 inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury
20 to the latter resulting from the former's repudiation of its prior conduct."  *Id.* at 804-05.
21 Plaintiff alleges that he "relied and acted upon . . . false facts and concealment to his
22 detriment and was damaged thereby[.]"  Doc. 1 at 24.  Kramer's complaint does not set
23 forth any factual allegations that demonstrate any inconsistent acts by Defendants.  The
24 closest Kramer comes to alleging facts supporting estoppel is his assertion that
25 "Defendants promised full compliance with the [Consent Judgment], and Arizona statute
26 and common law, upon which promises Defendants should have foreseen [Kramer]
27 would rely[.]"  Doc. 1 at 24.  This statement is nothing more than an attempt to shoehorn
28 facts pled to support fraud claims into a claim for estoppel.  Kramer has not identified

1 | any inconsistent act by either Defendant.  As such, Counts 10 and 11 will be dismissed.

2 | **IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 13) is **granted**.

3 | Dated this 8th day of May, 2014.

```
                                   David G. Campbell
                                   United States District Judge
```

- 11 -